1  WALTER J. LACK, ESQ., State Bar No. 57550
   *wlack@elllaw.com*
2  PAUL A. TRAINA, ESQ., State Bar No. 155805
   *ptraina@elllaw.com*
3  JARED W. BEILKE, ESQ., State Bar No. 195698
   *jbeilke@elllaw.com*
4  IAN P. SAMSON, ESQ., State Bar No. 279393
   *isamson@elllaw.com*
5  **ENGSTROM, LIPSCOMB & LACK**
6  A Professional Corporation
   10100 Santa Monica Blvd., 12th Floor
7  Los Angeles, California 90067-4113
   Tel: (310) 552-3800 / Fax: (310) 552-9434
8
9  GREG ASLANIAN, ESQ., State Bar No. 269824
   *greg@aslanianlawfirm.com*
10 **THE ASLANIAN LAW FIRM, P.C.**
11 790 East Green Street
   Pasadena, California 91101
12 Tel: (626) 696-2001/ Fax: (626) 682-3395

13 Attorneys for Plaintiffs/Relator

14

15          **UNITED STATES DISTRICT COURT FOR THE**

16              **CENTRAL DISTRICT OF CALIFORNIA**

17

18 UNITED STATES OF AMERICA,          CASE **CV15-09055** *RSWL* (JC)
   *EX REL.* RUBIE ALLAN; and
19 STATE OF CALIFORNIA,                **COMPLAINT FOR DAMAGES**
   *EX REL.* RUBIE ALLAN,              **AND CIVIL PENALTIES FOR**
20                                     **VIOLATIONS OF:**
21          Plaintiffs,
                                       **THE FEDERAL FALSE CLAIMS**
22     vs.                             **ACT (31 *U.S.C.* §§ 3729 *et seq.*);**
23 CALIFORNIA DRUG COMPOUNDING         **THE CALIFORNIA INSURANCE**
24 LLC; MICHAEL HEALD; IRMA DIAZ;      **FRAUDS PREVENTION ACT**
   JORGE GONZALEZ-BETANCOURT;          **(Cal. *Ins.* Code § 1871.7);**
25 and DOES 1 through 10,
                                       **THE CALIFORNIA *LABOR CODE***
26          Defendants.                **(Cal. *Lab.* Code §§ 98.6 & 1102.5);**
                                       **and**
27
28

   406302                    1
                   *QUI TAM* COMPLAINT

**WRONGFUL TERMINATION IN VIOLATION OF CALIFORNIA PUBLIC POLICY**

**JURY TRIAL DEMANDED**

**FILED UNDER SEAL**
*(31 U.S.C. §§ 3729-3733, et seq. and Cal. Ins. Code § 1871.7)*

The United States of America and the People of the State of California, by and through Relator, Rubie Allan ("Allan," "Plaintiff," or "Relator"), bring this action under the Federal False Claims Act, 31 *U.S.C.* § 3729 *et seq.* ("FCA") and the California *Insurance Code* § 1871.7 against Defendants California Drug Compounding, LLC ("CDC"), Michael Heald, Irma Diaz, Jorge Gonzalez-Betancourt and Does 1-10 (collectively, "Defendants"), to recover all damages, penalties, and other remedies provided for by the FCA.  Separately, Relator brings claims for wrongful termination and retaliation pursuant to state and federal law.  Plaintiffs for their Complaint allege and state as follows:

## INTRODUCTION

1.     CDC is a mail-order retail and compounding pharmacy doing business in several states.  From its inception in 2012 and continuing to the present, Defendants have used CDC to submit or cause to be submitted false claims for payment to the federal government's TRICARE program, a federal health benefits program operated for the benefit of active duty military and other eligible individuals, and to private insurance companies.

2.     As described in detail below, Defendants used CDC to systematically overcharge the TRICARE program and private insurance companies for fictitious, unnecessary, and improperly billed prescriptions. In addition to overcharging the program for unnecessary prescriptions pushed by Defendants' team of sales representatives (including doctors) and skirting TRICARE's more stringent

reimbursement rules by disguising non-covered services as covered services (including, but not limited to, crushing on-formulary pills to replicate compounding drugs TRICARE had excluded from coverage), Defendants used CDC to run a simple scheme: First, Defendants would submit a pharmacy claims for approval (either through TRICARE's designated pharmacy benefits manager, Express Scripts, Inc., or to the private insurer) for prescription medication (oftentimes costing over ten thousand dollars per prescription) ostensibly to be dispensed to an eligible beneficiary. Upon approval, Defendants would compound the prescription and ship it to the ostensible beneficiary. However, the beneficiary either would not receive the medication (because the package would be returned as undeliverable) or would send it back to CDC's North Hollywood headquarters because the patient believed it to be received in error. Upon receipt of the returned prescriptions—many came in each day—Defendants would destroy the prescription drugs inside but fail to reverse the claim for payment.

3.  Defendants' activities violated the Federal FCA and California law because they have been knowingly submitting and causing to be submitted claims for drugs that were never used by beneficiaries and claims which were not and should not have been properly presented.

4.  Relator Allan learned of Defendants' improper and illegal activities during her tenure at CDC. In February 2015, Relator began voluntarily providing information about CDC's activities to the California State Board of Pharmacy. The Board began an investigation, which included a raid of CDC's facilities on September 22, 2015. The next day, Defendants terminated Relator's employment without cause; Relator is informed and believes that Defendants determined that she was the underlying source which prompted the Board's investigation and raid, and therefore retaliated against her.

## PARTIES

5.  Relator Rubie Allan is and has been at all times relevant to this Complaint a resident of Glendale, California. During the time period from October 2013 until her

1 wrongful termination in September 2015, Allan was employed by CDC as a pharmacy
2 technician.

3       6.     Relator Allan has worked as a pharmacy technician since 2004. Prior to her
4 employment at CDC, Relator worked as a pharmacy technician in hospitals throughout
5 the Los Angeles area. On October 28, 2013, Relator began employment with CDC as a
6 pharmacy technician, and worked at CDC until she was terminated on September 23,
7 2015.

8       7.     None of the allegations set forth in this Complaint are based upon a public
9 disclosure of allegations or transactions in a criminal, civil or administrative hearing, in a
10 congressional, administrative or General Accounting Office report, hearing, audit or
11 investigation, or from the news media. Relator has direct and independent knowledge of
12 the information on which the allegations set forth in this Complaint are based.
13 Moreover, prior to filing this lawsuit and prior to any public disclosures regarding this
14 matter, Relator voluntarily provided the information set forth herein to agents of the
15 United States Department of Justice and agents of the California State Board of
16 Pharmacy.

17       8.     None of the allegations or transactions set forth in this Complaint are
18 substantially the same as allegations or transactions that have been publicly disclosed in
19 a federal criminal, civil, or administrative hearing in which the Government or its agents
20 is a party, or in a congressional, administrative, or Government Accountability Office, or
21 other federal report, hearing, audit or investigation, or from the news media. Prior to
22 filing this action, Relator voluntarily provided the Attorney General of the United States,
23 the United States Attorney for the Central District of California, the District Attorney for
24 Los Angeles County, and the Insurance Commissioner of California with her
25 information pursuant to 31 *U.S.C.* § 3730(e)(4)(B) and Cal. *Ins. Code* § 1871.7(h)(2)(B).

26       9.     Plaintiff, the United States of America, provides federal funding for certain
27 health insurance programs, including, but not limited to, the TRICARE and CHAMPUS
28

1  health care programs established pursuant to 10 *U.S.C.* § 1071 *et seq.* (collectively,
2  "TRICARE").

3      10.    The U.S. Department of Defense ("DOD") funds and oversees the
4  TRICARE programs, which cover a portion of the prescription drug expenditures
5  incurred by eligible beneficiaries, including uniformed service members and their
6  families. The TRICARE pharmacy benefits program is established by law at 10 *U.S.C.*
7  § 1074g. The DOD has also promulgated regulations relating to the program at 32
8  *C.F.R.* § 199.21.

9      11.    Defendant California Drug Compounding, LLC, is a privately held
10 California limited liability company based in Los Angeles County. CDC's headquarters
11 are located at 6878 Beck Avenue, North Hollywood, California 91605. CDC was first
12 formed on November 19, 2012 and received its pharmacy license from the State of
13 California on June 18, 2013. CDC operates using the NPI numbers 1356780472 and
14 1831569029. CDC is licensed with the California State Board of Pharmacy under
15 License Number 51459. CDC is also a licensed pharmacy in the following states:
16 Arizona, Colorado, Connecticut, Florida, Indiana, Kansas, Kentucky, Nevada, New
17 Jersey, New Mexico, New York, Ohio, Oklahoma, Tennessee, Texas, and West Virginia.

18     12.    Defendant Michael Heald is a resident of Tampa, Florida and a registered
19 principal of CDC. Along with Defendants Diaz and Gonzalez-Betancourt, Defendant
20 Heald controls CDC's operations.

21     13.    Defendant Irma Diaz is a resident of Los Angeles County, California and a
22 registered principal of CDC. Along with Defendants Heald and Gonzalez-Betancourt,
23 Defendant Diaz controls CDC's operations.

24     14.    Defendant Jorge Gonzalez-Betancourt is an inmate of the Florida
25 Department of Corrections and a partial owner of CDC. Defendant Gonzalez-
26 Betancourt is currently serving a thirty-year prison sentence following conviction on
27 drug trafficking and racketeering charges in Florida. Although Defendant Gonzalez-
28 Betancourt is not listed on any of the official corporate records of CDC, Defendant

1    Heald told Relator Allan that Defendant Gonzalez-Betancourt is, in fact, a partial owner

2    of CDC and helps to control its operations, but was not listed publicly because "we [*i.e.*,

3    CDC] couldn't have his name on anything." Along with Defendants Heald and Diaz,

4    Defendant Gonzalez-Betancourt controls CDC's operations.

5        15.    Defendants are principally engaged in the sale of pharmaceuticals,

6    including prescription drugs falling within the jurisdiction and regulation of the United

7    States Food and Drug Administration and subject to the terms of the California Health

8    and Safety Code.

9        16.    Plaintiff is unaware of the names, identities, or capacities of the defendants

10   sued as DOES 1-10, but is informed and believes and thereon alleges that each such

11   fictitiously-named defendant contributed to the violations alleged herein. Plaintiff will

12   amend her Complaint to state the true names, identities or capacities of such fictitiously-

13   named defendants when ascertained.

14                    **JURISDICTION AND VENUE**

15       17.    Jurisdiction in this Court is proper pursuant to 31 *U.S.C.* §§ 3732(a) and

16   3730(b). This Court can also exercise jurisdiction pursuant to 28 *U.S.C.* §§ 1331 and

17   1367, including over the state law claims asserted herein.

18       18.    This Court can exercise personal jurisdiction over the Defendants and venue

19   is proper in this District, pursuant to 31 *U.S.C.* § 3732(a) and 28 *U.S.C.* § 1391, because

20   the acts proscribed by 31 *U.S.C.* §§ 3729, *et seq.* and California law and complained of

21   herein took place in part in this District and the Defendants regularly transacted business

22   in this District. CDC's headquarters is in North Hollywood, California.

23       19.    Pursuant to 31 *U.S.C.* § 3730(b)(2) and California *Insurance Code*

24   § 1871.7(e)(2), the Plaintiff prepared, and has served with this Complaint upon the

25   Attorney General of the United States, the United States Attorney for the Central District

26   of California, the District Attorney and the Insurance Commissioner of California a

27   written disclosure of all material evidence and information currently in its possession.

28   That disclosure is supported by material evidence known to the Relator at the time of the

filing of this action establishing the existence of Defendants' violations of the FCA and the California Insurance Code.   Because those disclosures include attorney-client communications and work product, and were submitted to those officials in their capacity as potential co-counsel in the litigation, the Relator understands those disclosures to be confidential and exempt from disclosure under the Freedom of Information Act and any similar state laws. 5 *U.S.C.* § 552; 31 *U.S.C.* § 3729(c).

20.     Pursuant to 31 *U.S.C.* §3731(b)(1)(2) and California *Insurance Code* § 1871.7(k), this Complaint is initiated within the applicable statute of limitations.

## ALLEGATIONS COMMON TO ALL COUNTS

### A.     The False Claims Act ("FCA")

21.     The FCA, 31 *U.S.C.* § 3729(a)(1)(A), makes "knowingly" presenting or causing to be presented to the United States any false or fraudulent claim for payment or approval a violation of Federal law for which the United States may recover three times the amount of the damages the Government sustains, in addition to a civil monetary penalty of between $5,500 and $11,000 per claim.

22.     The FCA, 31 *U.S.C.* § 3729(a)(1)(B), makes "knowingly" making, using, or causing to be used or made, a false record or statement material to a false or fraudulent claim, a violation of Federal law for which the United States may recover three times the amount of the damages the Government sustains, in addition to a civil monetary penalty of between $5,500 and $11,000 per claim.

23.     The FCA defines a "claim" to include any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested. 31 *U.S.C.* § 3729(b)(2).

24.     The FCA, 31 *U.S.C.* § 3729(b)(1), provides that "(1) the terms 'knowing' and 'knowingly' – (A) mean that a person, with respect to information – (i) has actual

1  knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of
2  the information; or (iii) acts in reckless disregard of the truth or falsity of the
3  information; and (B) requires no proof of specific intent to defraud."

4      25.     The FCA, 31 *U.S.C.* § 3729(b)(4), provides that "(4) the term 'material'
5  means having a natural tendency to influence, or be capable of influencing, the payment
6  or receipt of money or property."

7      26.     As described in detail below, CDC violated the FCA through the fraudulent
8  submission of claims for payment to the TRICARE programs.

9      **B.**     **California Insurance Code Section 1871.7**

10      27.     The legislative findings and declarations associated with California
11  *Insurance Code* § 1871.7 make clear that California lawmakers were concerned with
12  health care fraud: "Health insurance fraud is a particular problem for health insurance
13  policyholders. Although there are no precise figures, it is believed that fraudulent
14  activities account for billions of dollars annually in added health care costs nationally.
15  Health care fraud causes losses in premium dollars and increases health care costs
16  unnecessarily." *See* Cal. *Ins. Code* § 1871(h).

17      28.     California state law prohibits the payments of kickbacks to physicians for
18  healthcare services, including prescription drugs.   *See* Cal. *B&P Code* § 650(a).
19  California also prohibits the employment of "runners, cappers, steerers or other persons
20  to procure clients or patients … to perform or obtain services of benefits under a contract
21  of insurance or that will be the basis for a claim against an insured individual or his or
22  her insurer." *See* Cal. *Ins. Code* § 1871.7(a).   California also expressly prohibits the
23  solicitation, acceptance, or referral of any business to or from any entity "with the
24  knowledge that, or reckless disregard for whether" the individual or entity will present or
25  cause to be present a false or fraudulent claim for payment of a health care benefit. *See*
26  Cal. *Pen. Code* § 549. Finally, California law makes it illegal for any entity to
27  "knowingly make or cause to be made any false or fraudulent claim for payment of a
28  health care benefit." *See* Cal. *Pen. Code* § 550.

29.     California's *Insurance Code* provides that any entity violating, *inter alia*, the provisions of Section 1871.7 or *Penal Code* §§ 549 and 550, is subject "to a civil penalty of not less than five thousand dollars ($5,000) nor more than ten thousand dollars ($10,000), plus an assessment of not more than three times the amount of each claim for compensation." Cal. *Ins. Code* § 1871.7(b).

30.     As explained below, Defendants' conduct violated the California Insurance Code and/or California Penal Code, thereby giving rise to this action.

C.     **Overview of the TRICARE Pharmacy Benefits Program**

31.     As explained above, TRICARE is a federally-funded program for certain eligible beneficiaries, including active duty service members and their families. TRICARE provides three primary health plan options to beneficiaries: (1) a managed care program referred to a TRICARE Prime; (2) a preferred-provider option referred to as TRICARE Extra; and (3) a fee-for-service option referred to as TRICARE Standard. In addition, TRICARE beneficiaries who also qualify for Medicare are enrolled in a program referred to as "TRICARE For Life," which provides Medicare-wraparound coverage.

32.     TRICARE beneficiaries may also participate in TRICARE's pharmacy benefits program regardless of the medical benefits option they choose.

33.     Express Scripts, Inc. ("ESI"), a pharmacy benefits manager (commonly known as a "PBM"), administers the TRICARE pharmacy benefit.  In that role, it processes claims for prescription drugs, administers a network of retail and specialty pharmacies within the TRICARE program, and operates a mail order pharmacy known as the TRICARE mail-order program.

34.     The TRICARE pharmacy benefit has a tiered copayment structure based upon the type of beneficiary, the drug's inclusion in TRICARE's formulary and the type of pharmacy where the prescription is filled.

35.     Active duty military service members are not required to pay any copayments or coinsurance.  These participants may have to pay claims for prescriptions

1  up-front (for example, at a pharmacy outside of ESI's network), but then are reimbursed
2  for the prescription costs later.

3    36. All other beneficiaries are entitled to receive the following benefits
4  depending upon the type of pharmacy filling the prescription:

     a. Military pharmacy: 90 day supply of most prescription drugs with $0
       copay;

     b. Home delivery (through ESI): 90 day supply of most prescription
       drugs with a $0 copay for generic formulary drugs, a $16 copay for
       brand name formulary, and, unless a showing of medical necessity is
       made, a $46 copay for non-formulary drugs.

     c. Network pharmacy: 30 day supply of most prescription drugs with a
       $8 copay for generic formulary drugs, a $20 copay for brand name
       formulary, and, unless a showing of medical necessity is made, a $47
       copay for non-formulary drugs.

     d. Non-network pharmacy: Varying rates of reimbursement depending
       on military status, pharmacy location, and formulary.

17    37. CDC is a member of ESI's retail pharmacy network for the TRICARE
18  pharmacy benefit program. As of the date of this complaint, CDC continues to be listed
19  on ESI's "Locate a Pharmacy" tool on its TRICARE pharmacy benefit website.

20    38. Regarding fraud, waste, and abuse in the TRICARE pharmacy benefits
21  program, the DOD's regulations state as follows: "All fraud, abuse, and conflict of
22  interest requirements for the basic CHAMPUS program, as set forth in this part 199 (*see*
23  applicable provisions of Section 199.9 of this part) are applicable to the TRICARE
24  pharmacy benefits program." *See* 32 *C.F.R.* § 199.21(p).

25    39. In turn, 32 *C.F.R.* § 199.9, the regulation referred to in 32 *C.F.R.*
26  § 199.21(p), defines "abuse" as "incidents and practices which may directly or indirectly
27  cause financial loss to the Government under CHAMPUS" and also by reference to 32
28  *C.F.R.* § 199.2, which defines "abuse" as "any practice that is inconsistent with accepted

1  sound fiscal, business, or professional practice which results in a CHAMPUS claim,
2  unnecessary cost, or CHAMPUS payment for services or supplies," including claims that
3  are "[n]ot within the concepts of medically necessary and appropriate care." 32 *C.F.R.*
4  § 199.9(b). That same section defines "fraud" by reference to 32 *C.F.R.* § 199.2, which
5  itself defines fraud as, *inter alia*, "a deception or misrepresentation by a provider … with
6  the knowledge (or who had reason to know or should have known) that the deception or
7  misrepresentation could result in … some unauthorized CHAMPUS payment,"
8  including, but not limited to, "[b]illing or submitting a CHAMPUS claim for costs for
9  noncovered or nonchargeable services, supplies, or equipment disguised as covered
10 items" and "arrangements by providers with employees, independent contractors … or
11 others which appear to be designed primarily to overcharge the CHAMPUS through
12 various means (such as commissions, fee-splitting, and kickbacks)." *See* 32 *C.F.R.*
13 199.9(c).

14     **D.     CDC's Fraudulent Activities**

15     40.     As alleged above, CDC is a compounding pharmacy primarily serving
16 patients through mail-order delivery of drugs. Generally, CDC receives its prescriptions
17 through an online portal or via physician's offices. Physicians may either submit the
18 prescription electronically or call it in over the phone.

19     41.     CDC employs sales representatives operating throughout the states in which
20 it conducts business. During her duration at CDC, Relator Allan learned that CDC's
21 sales representatives included physicians who wrote prescriptions intended to be
22 submitted to, filled by, and billed by CDC. Defendants oversaw the conduct of the sales
23 representatives. Additionally, during downtime periods, Relator Allan observed
24 members of CDC's billing department telephoning patients to offer them additional
25 prescription drugs, including compounded pain medications.

26     42.     Upon receipt of the prescription, CDC's billing department uses electronic
27 billing software to create a claim to submit to the relevant payer and/or that payer's
28 pharmacy benefits manager. The claim, which is in a format set by the National Council

1 for Prescription Drug Programs ("NCPDP"), is comprised of more than 130 fields of
2 information.

3     43.    For TRICARE claims, the NCPDP claim form would be submitted to ESI,
4 which, as explained above, was the PBM for the TRICARE pharmacy benefit. Using the
5 NCPDP claim, ESI would either approve or reject each claim CDC would submit to be
6 billed to the TRICARE pharmacy benefit.

7     44.    For private insurance claims, the billing department would use submit the
8 NCPDP claim to either a PBM or directly to the insurer for approval or rejection.

9     45.    Relator Allan knew, from her employment at CDC and conversations with
10 other CDC employees, that the majority of CDC's prescriptions were billed to the
11 federal TRICARE programs. In fact, Relator Allan observed that in June 2015,
12 following a reimbursement modification by TRICARE, CDC's prescription volume
13 dropped as a result, and the compounded medications it did prepare were often made
14 with a different formula.

15     46.    Relator Allan knew, from her employment at CDC and conversations with
16 other CDC employees, that CDC also billed private insurers, including Blue Cross, Blue
17 Shield, and Health Net.

18     47.    Relator Allan also observed that CDC took steps to skirt efforts by
19 TRICARE and its PBM, ESI, to control reimbursement for compounded drugs. For
20 example, because CDC knew that ESI would not approve claims for certain
21 compounding ingredients but would approve claims for on-formulary, commercially
22 manufactured pills, Defendants directed CDC employees to crush those pills and mix
23 them with costly base creams in order to bill for the compounded medication.

24     48.    Upon approval, the prescription is then presented to the pharmacist-in-
25 charge, who reviews the prescription before providing it to one of the pharmacy
26 technicians (including Relator Allan). The pharmacy technicians would compound the
27 drug as ordered in the prescription and return to the pharmacist for final review. Finally,
28 the prescription would be shipped.

49.    Many of the claims CDC billed to TRICARE and private insurance were for compounded creams (including pain and scar creams) that could cost over $20,000.  The medications included, among others, MuscuMed 5 (flurbiprofen, amitriptyline, gabapentin, deoxy d glucose, bupivacaine, and acyclovir), MuscuMed 20 (flurbiprofen, cyclobenzaprine, tramadol, and clonidine), FBCGL (gabapentin, clonidine, baclofen, flurbiprofen, and lidocaine), and scar cream (tranilast, fluticasone, caffeine, tamoxifen, collagenese, sodium hyaluric, and alpha lipoic).

50.    Compounded medication, particularly pain-related creams, can be very dangerous to vulnerable members of the population and should not be prescribed without therapeutic need.  For example, in February 2012, a six month old boy in Southern California died from a toxic overdose of pain relievers and other drugs after he came in contact with his mother's compounded cream.

51.    From the time she began work until the day she was fired, Relator Allan personally observed CDC's receipt of returned prescriptions.  Indeed, each day, several prescriptions would be returned to CDC's headquarters in North Hollywood as either undeliverable or by the recipient with an explanation that he or she (the recipient) did not order the medication or was unaware of its prescription.  Relator Allan personally observed several notations from patients indicating that they were returning the prescriptions because they did not order them from CDC.

52.    Nicholas Gonzalez, Defendant Jorge Gonzalez's son and a CDC employee, would handle the returned prescriptions by throwing away the boxes and the returned drugs.  However, Relator was able to take several photographs of returned prescriptions prior to their destruction.

53.    On one occasion, Relator Allan was asked to conduct patient intake (*e.g.*, answering CDC's patient service line to answer questions about medications).  Relator Allan spoke with at least one patient who called due to confusion over receiving a medication from CDC that the patient was not aware had been prescribed to the patient.

54.    CDC's inventory of drugs used to make its compounded medication is monitored by the California State Board of Pharmacy.

55.    Relator Allan also became aware of prescriptions submitted to CDC which the former pharmacist-in-charge refused to fill because of her concern that they were not authentic and/or therapeutically inappropriate.  As a result, Relator Allan observed that CDC terminated its relationship with the pharmacist-in-charge due to her refusal to fill such prescriptions.

56.    In February 2015, Relator Allan reported her concerns about CDC's activities to the California State Board of Pharmacy.  From February 2015 to September 2015, Relator Allan voluntarily assisted in the State Board's investigation while continuing her employment at CDC.

57.    Despite Nicholas Gonzalez's attempts to conceal the returned packages and their destruction, Relator was able to photograph several of the returned boxes throughout her employment at CDC.  Relator voluntarily provided photographs of the boxes and return labels to the State Board to facilitate its investigation.

58.    On September 22, 2015, agents of the California State Board of Pharmacy raided CDC's North Hollywood headquarters.  Agents removed, among other things, 149 returned boxes from the facility.  Following the investigation, Mickey Teller, CDC's pharmacist-in-charge, directly confirmed to Relator Allan that the claims underlying the returned prescriptions were not reversed upon the prescriptions' return, but were billed to TRICARE and other programs as if the prescription had been dispensed and received by the patient.

59.    On September 23, 2015, CDC terminated Relator Allan without explanation.  Relator is informed and believes, and thereon alleges, that Defendants terminated her employment because they determined that she was the source of State Board's investigation and raid.

///

///

## COUNT ONE

### (FEDERAL FALSE CLAIMS ACT
### 31 *U.S.C.* § 3729 (a)(1)(A))

60.   Relator restates and realleges the allegations in paragraphs 1 through 59 above as if each were stated herein in their entirety and those allegations are incorporated herein by reference.

61.   This is a claim for treble damages and penalties under the Federal False Claims Act, 31 *U.S.C.* § 3729, *et seq.*, as amended.

62.   From November 19, 2012, and continuing to the present, Defendants knowingly presented and/or caused to be presented to an officer or employee of the United States Government false or fraudulent claims for payment or approval in violation of 31 *U.S.C.* § 3729(a)(1)(A).

63.   Specifically, through the acts described herein, and from November 19, 2012 to the present, Defendants knowingly and intentionally presented and caused ESI, as its role of PBM for the TRICARE pharmacy benefit, to present materially false and/or fraudulent claims to officers of the United States Government, including without limitation, claims submitted to TRICARE for payment using federal funds under the TRICARE pharmacy benefit.

64.   As a result of Defendants' fraudulent actions, Government health care program officials from DOD, their contractors, carriers, intermediaries and agents, paid and approved claims for payment that should not have been paid or approved, and which would not have been paid or approved had the Government known the facts underlying the submission of those claims.

65.   The claims that Defendants submitted and/or caused to be submitted were "false" and/or "fraudulent" within the meaning of the FCA because they did not comply with material conditions of payment established by the Government.

66.   Defendants knowingly and intentionally failed to comply with material conditions of payment of the claims in many ways, including, *inter alia*, that Defendants

1   submitted and/or caused claims to be submitted for drugs that were returned by the

2   patient without reversing the claim for payment to TRICARE and/or overcharged the

3   TRICARE benefit for unnecessary and improperly billed medication.

4        67.    All of the above were individually and collectively material preconditions

5   of payment or approval.

6        68.    Defendants also falsely certified that CDC had complied with all applicable

7   statutes, laws, rules, regulations, instructions and contract provisions, and that the

8   pharmacy claims and data it submitted was true, accurate and complete.

9        69.    Such certifications were false and fraudulent because, as detailed above,

10  Defendants did not comply with the material statutes, rules, regulations, instructions, and

11  contract provisions.

12       70.    Defendants' false and fraudulent acts and omissions described above

13  influence, and/or had a natural tendency to influence, and/or were capable of

14  influencing, the payment or receipt of money or property by the United States.  Federal

15  health care program officials and their contractors, carriers, intermediaries and agents,

16  would not have paid and/or approved the claims had they known that CDC was violating

17  its legal and contractual obligations as described above.

18       71.    Defendants' knowing conduct rendered the resulting claims false, within

19  the meaning of the FCA.

20       72.    As a result, the United States has suffered significant losses in an amount to

21  be further determined.

22       73.    Moreover, each individual, fraudulent pharmacy claim submitted by CDC

23  to the TRICARE pharmacy benefit program is subject to a penalty of between $5,500

24  and $11,000 for each such claim.

25                          **COUNT TWO**

26                  **(FEDERAL FALSE CLAIMS ACT**

27                   **31 *U.S.C.* § 3729 (a)(1)(B))**

28       74.    Relator restates and realleges the allegations in paragraphs 1 through 59

1  above as if each were stated herein in their entirety and said allegations are incorporated

2  herein by reference.

3      75.    This is a claim for treble damages and penalties under the Federal False

4  Claims Act, 31 *U.S.C.* § 3729, *et seq.*, as amended.

5      76.    Defendants knowingly made, used or caused to be made, or used false

6  records and statements material to a false or fraudulent claim in violation of 31 *U.S.C.*

7  § 3729(a)(1)(B).

8      77.    The false records made and used by Defendants were the pharmacy claims

9  data submitted to the TRICARE pharmacy benefit program through ESI, the program's

10  designated PBM.

11      78.    As described above, each pharmacy claim and record submitted to

12  TRICARE and/or its PBM, ESI, through the NCPDP data was a false record or

13  statement that was material to the submission of a false and/or fraudulent PDE claim.

14      79.    Each pharmacy claims data entry was "false" and/or "fraudulent" within the

15  meaning of the FCA because it did not comply with a material condition of payment

16  established by the Government.

17      80.    The material conditions of payment with which Defendants knowingly

18  failed to comply, include, *inter alia*, that Defendants submitted and/or caused claims to

19  be submitted for drugs that were returned by the patient without reversing the claim for

20  payment to TRICARE and/or that overcharged the TRICARE benefit for unnecessary

21  and improperly billed medication.

22      81.    Defendants also falsely certified that CDC had complied with all material

23  Federal and State statutes and rules, and contract provisions and that the pharmacy

24  claims it submitted were true, accurate and complete.

25      82.    Such certifications were false and fraudulent because, as detailed above,

26  Defendants did not comply with the material statutes, rules, regulations, instructions, and

27  contract provisions.

28  ///

17

*QUI TAM* **COMPLAINT**

83.     Defendants' false and fraudulent records and statements described above were material to the false claims because they influenced, and/or had a natural tendency to influence, and/or were capable of influencing, the payment or receipt of money or property by the United States.   Federal health care program officials and their contractors, carriers, intermediaries and agents, would not have paid and/or approved the claims for had they known that CDC was in violation of its legal and contractual obligations as described above.

84.     Defendants' schemes resulted in knowingly false records and statements material to false claims being created and submitted.   As a result, the United States has suffered significant monetary losses in an amount to be further determined, including, but not limited to: payments made by DOD via the TRICARE program as a result of the claims for drugs that were not billed to TRICARE but never received by the intended beneficiary.

85.     Moreover, each individual pharmacy claim submitted or caused to be submitted by Defendants to the TRICARE program subjects Defendants to a penalty of between $5,500 and $11,000 for each and every such claim.

## COUNT THREE

### (FEDERAL FALSE CLAIMS ACT
31 *U.S.C.* § 3730(h) ("Retaliation/Termination"))

86.     Relator restates and realleges the allegations in paragraphs 1 through 59 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

87.     This is a claim for damages under 31 *U.S.C.* § 3730(h), known as "relief from retaliatory actions."

88.     31 *U.S.C.* § 3730(h)(1) provides that:

> Any employee … shall be entitled to all relief necessary to make that employee … whole, if that employee … is discharged, demoted, suspended, threatened, harassed, or in any other manner

1  discriminated against in the terms and conditions of employment

2  because of lawful acts done by the employee ... or associated others

3  in furtherance of an action under this section or other efforts to stop

4  1 or more violations of this subchapter.

5  89.   As alleged above, Defendants violated 31 *U.S.C.* § 3730(h)(1) by

6  terminating Relator Allan just one day after the raid by the California State Board of

7  Pharmacy, which was conducted due to Relator Allan's reporting of Defendants'

8  activities resulting in overcharges and false claims submitted to, *inter alia*, the

9  TRICARE programs.

10  90.   As a proximate result, Relator Allan suffered damages in an amount to be

11  determined at trial.

12  ### COUNT FOUR

13  ### (CALIFORNIA INSURANCE FRAUDS PREVENTION ACT
14  Cal. *Ins. Code* § 1871.7)

15  91.   Relator restates and realleges the allegations in paragraphs 1 through 59

16  above as if each were stated herein in their entirety and said allegations are incorporated

17  herein by reference.

18  92.   As alleged herein, Defendants violated California law by presenting or

19  causing to be presented claims for health care benefits to private insurers that were false,

20  fraudulent, or otherwise violated the law, including, but not limited to, claims influenced

21  by kickbacks.  As such,

22  93.   As a proximate result, Defendants' conduct improperly caused private

23  insurance companies to increase the amount of money spent for the reimbursement of

24  prescription drugs.

25  94.   The claims Defendants presented or caused to be presented therefore

26  constitute fraudulent claims within the meaning of California Insurance Code Section

27  1871.7(b) and California *Penal Code* Sections 549 and 550, among other provisions.

28  ///

## COUNT FIVE

### (WHISTLEBLOWER RETALIATION
### Cal. *Labor Code* § 1102.5)

95.    Relator restates and realleges the allegations in paragraphs 1 through 59 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

96.    This is a claim for damages and other relief pursuant to California *Labor Code* § 1102.5.

97.    California *Labor Code* § 1102.5 provides, in part:

(b) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

(c) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

///

98.     As explained above, Defendants violated California *Labor Code* § 1102.5 by retaliating against Plaintiff Allan for having reported violations of state and federal statutes (including the federal False Claims Act) to authorities.    Acts of retaliation include terminating Plaintiff Allan's employment, which Defendants took against Plaintiff Allan because she reported their fraudulent conduct as described above.

99.     As a proximate result, Plaintiff Allan suffered damages in an amount to be proven at trial.

## COUNT SIX

### (RETALIATION
### Cal. *Labor Code* § 98.6)

100.    Relator restates and realleges the allegations in paragraphs 1 through 59 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

101.    This is a claim for damages and other relief available under California *Labor Code* § 98.6.

102.    California *Labor Code* § 98.6 reads, in part:

> A person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee or applicant for employment because the employee or applicant engaged in any conduct delineated in this chapter…

103.    As alleged above, Defendants violated California *Labor Code* § 98.6 by retaliating against Plaintiff Allan for having reported violations of state and federal statutes (including the Federal False Claims Act) to authorities.    Acts of retaliation include terminating Plaintiff Allan's employment, which Defendants took against Plaintiff Allan because she reported their fraudulent conduct as described above.

104.    As a proximate result, Plaintiff Allan suffered damages in an amount to be proven at trial.

///

## COUNT SEVEN

### (WRONGFUL TERMINATION IN VIOLATION OF CALIFORNIA PUBLIC POLICY)

105. Relator restates and realleges the allegations in paragraphs 1 through 59 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

106. This is a claim for wrongful termination in violation of California public policy.

107. As explained above, Relator Allan's termination from employment with CDC was based upon Defendants' violation of the public policy of the state of California as set forth in Cal. *Lab. Code* §§ 98.6, 1102.5, Cal. *Gov. Code* §§ 12650 and 12940(h), Cal. *Ins. Code* § 1871.7, Cal. *Pen. Code* §§ 549-50, the California Constitution, and other statutes and provisions.

108. As a proximate result, Plaintiff Allan suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** for the reasons set forth above, Plaintiff/Relator, for herself and on behalf of the United States and the State of California, respectfully requests that the Court enter an Order against Defendants as follows:

a. An Order requiring Defendants to cease their violations of the FCA and California *Insurance Code* Section 1871.7;

b. An Order entering judgment in favor of the United States and Relator Allan and against Defendants in an amount equal to three times the damages the United States has sustained a result of Defendants' actions, as well as a civil penalty against Defendants of $11,000 for each violation of the FCA;

///

c.   An Order awarding to Relator Allan the maximum amount allowed as a "Relator's Share" pursuant to § 3730(d) of the FCA;

d.   An Order that civil penalties of $10,000 be imposed for each and every fraudulent claim Defendants presented or caused to be presented to an insurance company, plus an assessment of three times the amount of each claim as damages;

e.   An Order awarding to Relator Allan the maximum percentage of any recovery allowed pursuant to California *Insurance Code* § 1871.7;

f.   An Order awarding to Realtor Allan and from Defendants all reasonable expenses that were necessarily incurred, plus reasonable attorneys' fees and costs;

g.   An Order awarding to the United States and Relator Allan prejudgment interest;

h.   An Order awarding to the United States and Relator Allan post-judgment interest;

i.   An Order awarding to the State of California and Relator Allan prejudgment interest;

j.   An Order awarding to the State of California and Relator Allan post-judgment interest

k.   An Order awarding to Relator Allan general damages sustained according to proof;

l.   An Order awarding to Relator Allan any and all relief available for her wrongful termination pursuant to 31 *U.S.C.* § 3730(h), including, but not limited to, reinstatement, double back pay, interest on back pay, compensation for any special damages sustained as a result of Defendants' discrimination, and litigation costs and reasonable attorneys' fees;

m.   An Order awarding to Relator Allan any and all relief available for her wrongful termination pursuant to California state law, including, but not

limited to, reinstatement, back pay, interest on back pay, compensation for any special damages sustained as a result of Defendants' discrimination, penalties, and litigation costs and reasonable attorneys' fees; and

n. An Order awarding to Relator Allan punitive damages;

o. An Order awarding to the United States, the State of California, and Relator Allan all such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully Submitted,

Dated: November 20, 2015

ENGSTROM, LIPSCOMB & LACK
THE ASLANIAN LAW FIRM

By:_____
    WALTER J. LACK, ESQ.
    PAUL A. TRAINA, ESQ.
    JARED W. BEILKE, ESQ.
    IAN P. SAMSON, ESQ.
    GREG ASLANIAN, ESQ.
    Attorneys for Plaintiff/Relator

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

UNITED STATES OF AMERICA, EX REL. RUBIE ALLAN; and
STATE OF CALIFORNIA, EX REL. RUBIE ALLAN

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

CALIFORNIA DRUG COMPOUNDING LLC; MICHAEL HEALD; IRMA DIAZ; JORGE
GONZALEZ-BETANCOURT; and DOES 1 through 10,

**(b) County of Residence of First Listed Plaintiff** _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**County of Residence of First Listed Defendant**   Los Angeles
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are
representing yourself, provide the same information.

(SEE ATTACHMENT)

**Attorneys** *(Firm Name, Address and Telephone Number)* If you are
representing yourself, provide the same information.

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☒ 1. U.S. Government
     Plaintiff

☐ 2. U.S. Government
     Defendant

☐ 3. Federal Question (U.S.
     Government Not a Party)

☐ 4. Diversity (Indicate Citizenship
     of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original
     Proceeding

☐ 2. Removed from
     State Court

☐ 3. Remanded from
     Appellate Court

☐ 4. Reinstated or
     Reopened

☐ 5. Transferred from Another
     District (Specify)

☐ 6. Multi-
     District
     Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No        ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

31 U.S.C. §§ 3729 et seq. Complaint For Damages And Civil Penalties For Violations Of The Federal False Claims Act.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☒ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**       Case Number:        CV15-09055

CV-71 (10/14)                    **CIVIL COVER SHEET**                    **Page 1 of 3**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No<br><br>If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action?<br><br>☒ Yes  ☐ No<br><br>If "no," skip to Question C. If "yes," answer Question B.1, at right. | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☒ NO. Continue to Question B.2. |
| | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☒ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action?<br><br>☐ Yes  ☒ No<br><br>If "no," skip to Question D. If "yes," answer Question C.1, at right. | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Continue to Question C.2. |
| | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D:  Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |

| **D.1. Is there at least one answer in Column A?** | **D.2. Is there at least one answer in Column B?** |
|---|---|
| ☐ Yes  ☒ No | ☐ Yes  ☒ No |
| If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br>Enter "Southern" in response to Question E, below, and continue from there.<br>If "no," go to question D2 to the right. ➡ | If "yes," your case will initially be assigned to the<br>EASTERN DIVISION.<br>Enter "Eastern" in response to Question E, below.<br>If "no," your case will be assigned to the WESTERN DIVISION.<br>Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | WESTERN |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes  ☒ No |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court?**          ☒ NO          ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court?**          ☒ NO          ☐ YES

If yes, list case number(s): _____

**Civil cases** are related when they (check all that apply):

☐   A. Arise from the same or a closely related transaction, happening, or event;

☐   B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐   C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐   A. Arise from the same or a closely related transaction, happening, or event;

☐   B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐   C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** _____   DATE: November 20, 2015

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

## ATTACHMENT

### 1. (b) PLAINTIFFS Attorneys (Firm Name, Address and Telephone Number.)

WALTER J. LACK, ESQ., State Bar No. 57550
wlack@elllaw.com
PAUL A. TRAINA, ESQ., State Bar No. 155805
ptraina@elllaw.com
JARED W. BEILKE, ESQ., State Bar No. 195698
jbeilke@elllaw.com
IAN P. SAMSON, ESQ., State Bar No. 279393
isamson@elllaw.com
ENGSTROM, LIPSCOMB & LACK
A Professional Corporation
10100 Santa Monica Blvd., 12th Floor
Los Angeles, California 90067-4113
Tel: (310) 552-3800 / Fax: (310) 552-9434

GREG ASLANIAN, ESQ., State Bar No. 269824
greg@aslanianlawfirm.com
THE ASLANIAN LAW FIRM, P.C.
790 East Green Street
Pasadena, California 91101
Tel: (626) 696-2001/ Fax: (626) 682-3395

Attorneys for Plaintiffs/Relator

#406521